IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

APR - 2 2009

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

MASSIMO ZANETTI BEVERAGE )
USA, INC., )
)
Plaintiff, )
)
v. ) Civil Action No. 2:09cv147
)
) **JURY TRIAL DEMANDED**
WARNER BROTHERS )
ENTERTAINMENT, INC., )
DC COMICS, )
and ORGANIC COFFEE CARTEL, LLC, )
)
Defendants. )
_____ )

## COMPLAINT

Plaintiff, Massimo Zanetti Beverage USA, Inc. ("Massimo" or "Plaintiff"), by and through counsel, for its Complaint against Warner Brothers Entertainment, Inc. ("Warner Brothers"), DC Comics, and Organic Coffee Cartel, LLC ("OCC") (collectively "Defendants"), alleges as follows:

### Parties

1. Plaintiff Massimo is a Delaware corporation with its principal place of business in Portsmouth, Virginia.

2. Defendant Warner Brothers, upon information and belief, is a Delaware corporation with its principal place of business in Los Angeles, California.

3. Defendant DC Comics, upon information and belief, is a New York domestic business corporation with its principal place of business in New York, New York.

4. Defendant OCC, upon information and belief, is a New York domestic limited

1

liability company with its principal place of business in Rye, New York.

## Jurisdiction and Venue

5.    This is an action for trademark infringement, trade dress infringement, trademark dilution, and unfair competition arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* and the common law.

6.    This court has original jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) because this action arises under an Act of Congress relating to trademarks. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1338(b) because the action asserts a claim of unfair competition joined with a substantial and related claim under the trademark laws.

7.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all common law claims in this civil action because the common law claims are so related to claims over which this Court has original jurisdiction that the common law claims form part of the same case or controversy under Article III of the United States Constitution.

8.    Upon information and belief, venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because it is a district in which Defendants are subject to personal jurisdiction.

9.    Upon information and belief, this Court has personal jurisdiction over Defendants because Defendants have committed, directed, authorized, endorsed, sponsored and/or approved acts of infringement in the Eastern District of Virginia and Defendants have caused tortious injury to Massimo in the Eastern District of Virginia, Norfolk Division.

## Factual Allegations

### Massimo's Chock full o'Nuts Brand

10.    Massimo is a company in the business of selling a wide array of premium coffees,

2

including the Chock full o' Nuts® brand of coffee. Chock full o' Nuts coffee has served as an iconic brand of New York for many years. Massimo first sold coffee under the Chock full o' Nuts brand beginning in the 1930s, and the Chock full o' Nuts brand coffee has enjoyed significant fame and exposure in the marketplace, including serving as the official coffee of the New York Yankees and the only coffee served at Yankee Stadium, the official coffee of Madison Square Garden and the preferred coffee of the New York Knicks, and the official coffee of Radio City Music Hall.

11.     Chock full o' Nuts coffee has become well known and famous, as evidenced by its significant sales and widespread use in the United States. Currently, annual sales of Chock full o' Nuts exceed $50 million annually in all fifty states.

12.     Massimo has marketed and sold Chock full o' Nuts coffee throughout the United States through the stream of interstate commerce.

13.     Massimo is the owner of the trade dress rights in the Chock full o' Nuts coffee packaging, as depicted below ("CFON Trade Dress").



See Exhibit 1.

14.    Massimo or its predecessors have used the CFON Trade Dress since at least 2004 in connection with the sale of coffee, and other related goods and services. The CFON Trade Dress includes, but is not limited to, a black and yellow/gold color scheme for its packaging, which has various alternative colors depending on the type of coffee in the container (e.g. organic, original, French roast). The CFON Trade Dress includes a cylindrical can having a label with a black background located on the upper portion of the label, with a yellow/gold background located on the lower portion of the label. The black portion contains the brand name of the coffee above the statement "New York's Coffee Since 1932," which is depicted above a thin, colored line running horizontally across the front of the label. An elongated checkerboard portion in black and yellow/gold is depicted below the yellow/gold portion of the label. Another band of color, which corresponds to color of the thin line below the "New York's Coffee Since 1932" statement, is depicted below the elongated checkerboard portion. The gold/yellow portion of the label includes various shades of gold and yellow and depicts a cityscape. A toroidal-shaped figure with a banner overlay is also depicted in the yellow/gold portion of the label, with text contained in both the toroidal-shaped figure and the banner.

15.    Massimo is the title owner of U.S. Trademark Registration No. 2,173,203, which is incontestable, for the following design, which constitutes an element of the CFON Trade Dress:



for use in connection with "coffee" ("Checkerboard Mark"). See Exhibit 2. The Checkerboard Mark was first used in commerce in connection with coffee as early as 1960. Massimo is also

the owner of all common law rights in the above design for use in connection with coffee and related goods and services.

16.    The Checkerboard Mark and CFON Trade Dress have been used extensively in television commercials, in motion pictures, in print advertisements, on the Internet, in movies, and in numerous signs, banners and promotional materials throughout the United States. Massimo has historically spent extensive sums advertising its Chock full o' Nuts brand under the CFON Trade Dress and Checkerboard Mark, and Massimo's current plan includes a multi-million dollar annual advertising budget for the Chock full o' Nuts brand.

17.    Massimo has invested great time, effort and resources in the development of a distinctive, famous, and well-known series of trademarks and trade dress, all associated with the Chock full o' Nuts brand and its reputation as a premium coffee, such that Massimo's unique goods and services have become widely recognized as emanating from Massimo.

**Defendants' Theft of the CFON Trade Dress and Checkerboard Mark**

18.    Upon information and belief, the OCC sells seasonal organic coffees and coffee related goods through its website at http://www.organiccoffee.com, and is owned by Clay Enos ("Enos") and his father.

19.    Upon information and belief, Enos works or worked as a photographer for Warner Brothers in connection with the motion picture *Watchmen*. *Watchmen* is a motion picture produced by Warner Brothers, which was based on a graphic/comic novel published by DC Comics. Set in New York, the *Watchmen* film and novel depict superheroes collaborating to prevent the United States from going to nuclear war with the Soviet Union. In both the novel and film, there is a scene in which two superheroes, Nite Owl and Silk Spectre II, save a group of people from a tenement fire, and then serve coffee for the victims on board the Nite Owl ship.

5

20.    Upon information and belief, the OCC has developed, offered for sale, sold or distributed Nite Owl coffee having the following design on the packages through OCC's website as a tie-in in an effort to promote the *Watchmen* film ("Nite Owl coffee packaging"):



See Exhibit 3.

21.     The Nite Owl coffee packaging misappropriates and is confusingly similar to the

CFON Trade Dress and Checkerboard Mark:



22.     Specifically, the Nite Owl coffee packaging appropriates the Checkerboard Mark,

and the following from the CFON Trade Dress (without limitation): (1) a black and yellow/gold

color scheme placed on a cylindrical can having a label with a black background located on the

upper portion of the label, and a yellow/gold background located on the lower portion of the

label; (2) where the black portion contains the brand name of the coffee above the phrase "New

York's Favorite Coffee Since 1984"; (3) which is depicted above a thin, colored line which runs

horizontally across the front of the label; (4) where the gold/yellow portion of the Nite Owl

coffee packaging label includes various shades of gold and yellow and depicts a cityscape; and

(5) where the label includes a toroidal-shaped figure with a banner overlay depicted in the

yellow/gold portion of the label, with text contained in both the toroidal-shaped figure and the

banner.

23.     Upon information and belief, Enos made the following statement during an

interview about his role as a photographer for the movie:

> In fact, I'll let you in on a little secret: we're going to do a Nite Owl coffee. As far as I know, that's the first ever movie tie-in coffee. I mean, I don't know of any other. **It'll be in a can, kind of 'Chock Full O' Nuts-esque.'** On one side, it looks very vintage-y, it's a Veidt Enterprises/Nite Owl dark roast. It has all the trappings of a movie prop. And as you spin it around, there's one of my portraits of Nite Owl and a little description of the scene with the tenement fire victims are served coffee.

See Exhibit 4, page 3 (emphasis added).

24.    Upon information and belief, Enos also made the following statement during an interview: "Zack Snyder and the other filmmakers got behind the coffee idea early on and suggested the contest to me. I am so excited by the idea of making someone's day not just with great coffee but with an opportunity to be a part of the celebration for the highly anticipated film." See Exhibit 5, page 3.

25.    On information and belief, Defendants' intentionally misappropriated the CFON Trade Dress and the Checkerboard Mark because of, *inter alia*, the extensive and longtime fame of the Chock Full o' Nuts brand, and particularly its long association with the city of New York, where *Watchmen* takes place and which location is an integral aspect of the film and novel.

26.    Through its partnership with the OCC, Warner Brothers has endorsed, sponsored, or promoted Nite Owl coffee in connection with *Watchmen*. Warner Brothers sponsors, endorses, or promotes the sale of the Nite Owl coffee by providing a direct link from its website (http://watchmenmovie.warnerbros.com/partnersPage/partners.html) to the OCC website, where Nite Owl coffee may be purchased. See Exhibit 6.

27.    The Nite Owl coffee packaging includes numerous elements of the *Watchmen* film and novel, including the name of the main character, the superhero "Nite Owl," the name of the fictional company "Veight Enterprises," which comes from the film, and a photograph of the Nite Owl character from the movie. The Nite Owl coffee packaging also includes the following

8

statement: "Motion Picture Artwork and Photography ©2008 Warner Bros. Entertainment Inc. All Rights Reserved. WATCHMEN and all related characters and elements are trademarks of and © DC Comics." There is also an ® following the OCC mark on the packaging.

28.    The OCC's website also contains numerous elements of the *Watchmen* film and novel, including the following statement: "WATCHMEN and all related characters and elements are trademarks of and © of DC Comics. Motion Picture Artwork and Photography © 2009 Warner Bros. Entertainment Inc. All Rights Reserved." See Exhibit 7, page 3.

29.    The Nite Owl coffee packaging does not reference Chock full o' Nuts, Massimo, or any of Massimo's intellectual property.

30.    Upon information and belief, Warner Brothers and DC Comics granted the OCC a license or licenses to utilize trademarks, copyrights, or other intellectual property in connection with the Nite Owl coffee packaging, with knowledge of the appearance of the Nite Owl coffee packaging.

31.    Upon information and belief, the Nite Owl coffee was created to benefit and promote the *Watchmen* film, graphic novel, and associated goods and services, from which the OCC, Warner Brothers, and DC Comics knowingly derive benefits.

32.    Defendants have engaged in numerous promotions so that there is no question in the minds of consumers that the Nite Owl coffee is associated with, sponsored by, endorsed by, or affiliated with the *Watchmen* film and/or novel, Warner Brothers, and DC Comics.

33.    For example, the OCC sponsored a contest where purchasers of the Nite Owl coffee would be eligible to win two tickets to the Los Angeles premiere and after-party for *Watchmen* on March 3, 2009. See Exhibit 8, page 1.

9

34. Upon information and belief, the OCC and/or Enos have been promoting the Nite Owl coffee in connection with the *Watchmen* film at various promotional events approved by Warner Brothers and DC Comics, including book signings and interviews, and by postings on the Internet.

35. Defendants do not have a license or permission from Massimo to use the CFON Trade Dress or Checkerboard Mark.

36. There is a substantial likelihood that consumers will be confused as to the source of the goods and services that Defendants are promoting, using, marketing and/or sponsoring under the Nite Owl coffee packaging.

37. There is a substantial likelihood that consumers will purchase the Nite Owl coffee believing that it is sponsored by, endorsed by, affiliated with, or originating from Massimo.

38. Multiple instances of actual confusion have resulted from Defendants' use of the Nite Owl coffee packaging.

39. On one Internet blog, a posting was made on February 10, 2009, stating "I have looked very hard at the Nite Owl cans, and I think it might be Chock full of Nuts coffe[e]." See Exhibit 9.

40. On another Internet blog, a posting was made on February 18, 2009, commenting on a photograph of a can of Nite Owl coffee and stated "[l]ooks like a can of Chock full o' Nuts. My favourite coffee, which I can no longer find in Canada." See Exhibit 10, page 3.

41. On another website, a posting was made on February 24, 2009, depicting a photograph of the Nite Owl coffee and stating that the "design is 100% pure Chock full o' Nuts." See Exhibit 11.

10

42.     Defendants' use of the Nite Owl coffee packaging has also caused tarnishment of CFON Trade Dress and Checkerboard Mark.

43.     On one website, a posting was made on February 26, 2009, commenting on the Nite Owl coffee and stating that "[t]his product is one of the many reasons Alan Moore would rather not have his name attached to the Watchmen movie. Like JFK burgers or Hitler dolls this coffee is the epitome of bad taste." See Exhibit 12, page 1.

44.     On another website, a posting was made on February 26, 2009, commenting on the Nite Owl coffee and stating "[w]as Alan Moore's head exploding with frustration in Northampton. Is there nothing that the shills in Hollywood won't market to try and turn a quick buck? Well, apparently they missed a trick with the 'Schindler's List' commemorative 'Amon Goeth replica sniping rifle' - but that's about it. Absolutely disgraceful." See Exhibit 12, page 2.

## COUNT ONE
## (TRADE DRESS INFRINGEMENT)

45.     Massimo repeats and realleges, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

46.     The cause of action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47.     Massimo owns valid and protectable trade dress rights in the CFON Trade Dress used on the Chock full o' Nuts coffee packaging.

48.     Massimo has used the CFON Trade Dress continuously and in good faith, in connection with coffee products, since prior to Defendants' use of confusingly similar trade dress in connection with the Nite Owl coffee packaging.

11

49.     The CFON Trade Dress is nonfunctional, inherently distinctive, and has acquired secondary meaning.  The public associates the CFON Trade Dress with Massimo and Chock full o' Nuts.

50.     Massimo has engaged in extensive advertising and sales of the Chock full o' Nuts coffee bearing the CFON Trade Dress across the United States.

51.     Defendants' wrongful acts alleged herein violate Massimo's rights under 15 U.S.C. § 1125(a), constitute trade dress infringement and the "palming off" and/or "passing off" of Defendants' products as those of Massimo's, and have created a likelihood of confusion, mistake, or deception as to the origin, sponsorship or approval of Defendants' products.

52.     Defendants knew or should have known, by the exercise of reasonable care, that use of the Nite Owl coffee packaging would cause confusion, mistake or deception among purchasers of this product, as well as the general public.

53.     Upon information and belief, Defendants' knew of the CFON Trade Dress, and intended to induce and did induce, and intend to induce and will induce consumers to purchase Defendants' products by trading off the extensive goodwill built up by Massimo in the CFON Trade Dress, such that Defendants' conduct has been willful and deliberate.

54.     Defendants' wrongful acts alleged herein have permitted or will permit Defendants to earn substantial revenues and profits on the strength of Massimo's extensive advertising, consumer recognition, and goodwill.

55.     The goodwill of Massimo's business is of enormous value, and Massimo has suffered and is continuing to suffer damages to its business, trade, reputation, and goodwill as a result of the erroneous perception that Defendants' products are affiliated with, sponsored by, approved by, or originating from Massimo.

12

56.     As a result of Defendants' wrongful acts alleged herein, Massimo has suffered and is continuing to suffer irreparable injury.  Massimo cannot be adequately compensated for these injuries by damages alone, and Massimo has not adequate remedy at law for Defendants' infringement of its rights.  Massimo is entitled to injunctive relief, as well as attorneys' fees.

## COUNT TWO
## (TRADEMARK INFRINGEMENT)

57.     Massimo repeats and realleges, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

58.     This claim arises under section 32(a) of the Lanham Act, 15 U.S.C. §§ 1114 for infringement of Massimo's federally registered Checkerboard Mark, and under section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a), for infringement of Massimo's common law trademark rights in the checkerboard design for use in connection with coffee.

59.     The Checkerboard Mark, both as set forth in Registration No. 2,173,203 and as used by Massimo, is a valid, protectable, and enforceable mark.  Massimo has used the Checkerboard Mark continuously and in good faith, in connection with coffee and with other related goods and services, since prior to Defendants' use of the mark in connection with identical goods and services.

60.     Registration No. 2,173,203 is incontestable pursuant to 15 U.S.C. §§ 1065, 1115(b).

61.     By reason of Massimo's continuous use and promotion of the Checkerboard Mark, as well as its distinctiveness, consumers associate the Checkerboard Mark with Massimo, and the Chock full o' Nuts brand, as the single source or sponsor of its goods and services.  Massimo's rights are superior to any rights Defendants' may claim.

13

62.     Defendants are using the Checkerboard Mark in connection with goods and services that are identical to the goods offered by Massimo in connection with the Checkerboard Mark.

63.     Defendants' use of the Checkerboard Mark creates a likelihood of confusion, mistake, or deception among consumers, between Defendants' goods and services and those offered by Massimo in connection with the Checkerboard Mark.

64.     Defendants knew or should have known, by the exercise of reasonable care, that use of the Checkerboard Mark in connection with coffee, and with other related goods and services, would cause confusion, mistake, or deception among the public consumers of those goods.

65.     Upon information and belief, Defendants knew of Massimo's prior use of the Checkerboard Mark, and intended to induce and did induce, and intend to induce and will induce consumers to purchase Defendants' goods and services by trading off the extensive goodwill built up by Massimo in its Checkerboard Mark.

66.     To date, Defendants have not ceased use of the Checkerboard Mark, in violation of Massimo's legitimate and conclusive rights to the exclusive use of the mark.

67.     Defendants' wrongful acts alleged herein violates Massimo's rights under 15 U.S.C. §§ 1114(1)(a), 1125(a).

68.     Defendants' wrongful acts alleged herein are deliberate and willful.

69.     Defendants' wrongful acts alleged herein have permitted and/or will permit Defendants to earn substantial revenues and profits on the strength of Massimo's extensive advertising, consumer recognition, and goodwill.

70.    By reason of Defendants' wrongful acts alleged herein, Massimo has suffered and is continuing to suffer damage to its business, trade, reputation, and goodwill as a result of the erroneous perception that the goods and services of Defendants' are affiliated with, sponsored by, approved by, or originate from Massimo.

71.    As a result of Defendants wrongful acts alleged herein, Massimo has suffered and is continuing to suffer irreparable injury.  Massimo cannot be adequately compensated for these injuries by damages alone, and Massimo has no adequate remedy at law for Defendants' infringement of its rights.  Massimo is entitled to injunctive relief, as well as attorneys' fees.

## COUNT THREE
### (DILUTION)

72.    Massimo repeats and realleges, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

73.    This cause of action arises under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

74.    The CFON Trade Dress and Checkerboard Mark are distinctive and famous within the meaning of 15 U.S.C. § 1125(c).

75.    Defendants' commercial use of the Checkerboard Mark and CFON Trade Dress began long after the Checkerboard Mark and CFON Trade Dress had become famous.

76.    Defendants' wrongful acts alleged herein dilute and tarnish the distinctive quality of Massimo's goods and services, and lessen the capacity of the Checkerboard Mark and the CFON Trade Dress to identify and distinguish Massimo's goods and services from those of Defendants and others, in violation of 15 U.S.C. § 1125(c).  Defendants' wrongful acts also create a likelihood of dilution of the Checkerboard Mark and CFON Trade Dress.

77.     Massimo has been and will continue to be damaged by Defendants' wrongful acts, suffering damage to its business, trade, reputation, and goodwill.

78.     The goodwill of Massimo's business is of enormous value, and Massimo will suffer irreparable harm should Defendants' wrongful acts be permitted to continue to the detriment of Massimo's business, trade, reputation, and goodwill.

79.     Defendants' dilution, on information and belief, has been willful, deliberate, and intentional, and will continue unless enjoined by this Court.

## COUNT FOUR
## (FEDERAL UNFAIR COMPETITION)

80.     Massimo repeats and realleges, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

81.     This claim arises under 15 U.S.C. § 1125(a) for unfair competition, including false designation of origin and palming off.

82.     Having constructive, if not actual, knowledge of Massimo's prior use of the Checkerboard Mark and CFON Trade Dress, Defendants continue to use the Checkerboard Mark and CFON Trade Dress in interstate commerce in connection with goods and services that are identical, similar, and/or related to those goods and services offered by Massimo, which tends to falsely describe and represent a false designation of origin with Massimo, and which tends to palm off Defendants' goods and services as affiliated with, sponsored by, approved by, or originating from Massimo.

83.     The Checkerboard Mark and CFON Trade Dress are valid and enforceable, inherently distinctive, and have attained secondary meaning such that consumers identify them as originating solely from Massimo.

84.    Defendants' use of the Checkerboard Mark and CFON Trade Dress creates a likelihood of confusion in the minds of consumers.

85.    Defendants' wrongful acts alleged herein constitute unfair competition, and Massimo has been and will continue to be damaged by such unfair competition, suffering damage to its business, trade, reputation, and goodwill.

86.    Defendants' use of the Checkerboard mark and Massimo Trade Dress demonstrates Defendants' intent both to palm off their goods and services as affiliated with, sponsored by, approved by, or originating from Massimo, and to trade off the goodwill that Massimo has established in the use of its marks and trade dress in connection with its goods and services.

87.    The goodwill of Massimo's business is of enormous value, and Massimo will suffer irreparable harm should Defendants' unfair competition be allowed to continue to the detriment of Massimo's business, trade, reputation, and goodwill.

88.    Defendants' unfair competition, false designation of origin, and palming off, on information and belief, have been willful, deliberate, and intentional, and will continue unless enjoined by this Court.

**Prayer For Relief**

WHEREFORE, Massimo prays:

(a)    that this Court issue preliminary and permanent injunctive relief against Defendants, their respective officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from continued acts of infringement of the CFON Trade Dress in its Chock full 'o Nuts coffee packaging;

(b)    that this Court issue preliminary and permanent injunctive relief against Defendants, their respective officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from continued acts of infringement of the Checkerboard Mark, Registration No. 2,173,203 and Massimo's common law rights in the checkerboard design as used on coffee;

(c)    that this Court issue preliminary and permanent injunctive relief against Defendants, their respective officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from continued acts of unfair competition;

(d)    a judgment holding Defendants liable for infringement of the CFON Trade Dress;

(e)    a judgment holding Defendants liable for infringement of the Checkerboard Mark, Registration No. 2,173,203;

(f)    a judgment holding Defendants liable for infringement of Massimo's common law trademark rights;

(g)    a judgment holding Defendants liable for unfair competition;

(h)    an accounting and award of Defendants' profits as a result of Defendants' trade dress infringement and unfair competition with respect to its Nite Owl coffee;

(i)    an accounting and award of Defendants' profits as a result of Defendants' trademark infringement with respect to its Nite Owl coffee;

(j)    that Defendants' acts be deemed willful and intentional and that Defendants be required to pay Massimo enhanced damages pursuant to 15 U.S.C. § 1117(a);

(k)     that this be adjudged an exceptional case and that Massimo be awarded its attorney fees, pursuant to 15 U.S.C. § 1117(a) in addition to other authority;

(l)     that upon final judgment, if in favor of Massimo, this Court issue a Writ to the United States Marshal that directs the Marshal to seize and impound all of Defendants' goods which infringe the Checkerboard Mark and the Massimo Trade Dress, and that all of these items be destroyed;

(m)     that this Court award Massimo its costs incurred herein;

(n)     that this Court award prejudgment and post-judgment interest as allowed by law; and

(o)     for such other and further relief as this Court deems just.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Massimo hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 2nd day of April, 2009.

MASSIMO ZANETTI BEVERAGE USA, INC.

By: _____

Craig L. Mytelka (VSB #31652)
cmytelka@williamsmullen.com
William R. Poynter (VSB #48672)
wpoynter@williamsmullen.com
Amy G. Marino (VSB #71236)
amarino@williamsmullen.com
WILLIAMS MULLEN, PC
222 Central Park Avenue
Suite 1700
Virginia Beach, Virginia 23462
Phone: (757) 499-8800
Fax: (757) 473-0395

*Attorneys for Plaintiff Massimo Zanetti Beverage USA, Inc.*